BOBBIE W. CURTIS, APPELLEE AND CROSS-APPELLANT, V.
MILLARD SCHOOL DISTRICT NO. 17, A CORPORATE
GOVERNMENTAL BODY, APPELLANT AND CROSS-APPELLEE.
349 N.W.2d 379

Filed June 1, 1984.   No. 83-423.

P. Shawn McCann of Sodoro, Daly & Sodoro, for
appellant.

Patrick W. Kennison of Kutak Rock & Huie, for
appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS,
CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.
The defendant, Millard School District No. 17, has
appealed from an order of the district court finding
it to be in contempt of court. It had failed to comply
with the court's earlier order to produce the written
narrative statement taken from a witness to an acci-
dent. The assignments of error examine the status
of investigative statements taken by insurance
claims adjusters under the rules relating to the
attorney-client privilege and the work product doc-
trine. The plaintiff-appellee cross-appeals, contend-
ing that the sanctions imposed were so insignificant
as to be totally inefficacious.
According to the plaintiff's petition, his minor son
Paul was injured on January 6, 1981, while partici-
pating in a mandatory physical education class held
at the school operated by the defendant. He alleged
that the injuries and damages resulted from the neg-
ligence of the defendant by and through its agents

and employees. After complying with the Political Subdivisions Tort Claims Act, suit was filed by the plaintiff in district court on December 14, 1982.

The facts are gathered from the affidavit of plaintiff's counsel filed in the discovery proceedings. The minor child had just moved to Millard from out of state and had attended classes but 1 day. Therefore, he knew no one in this particular class and was unable to learn the names of witnesses to his accident or the names of his teachers or supervisors.

On December 16, 1981, plaintiff's counsel requested of the insurance claims representative the names and addresses of the students attending and the teachers supervising his class. The insurance investigator represented to counsel in a telephone conversation that the information would be furnished. However, this same representative, on January 4, 1982, took a statement from Jack Lawson, the instructor in charge, but did not disclose his identity at that time. On January 26, 1982, written request for this same information was made upon the insurance adjuster, who promised to contact counsel as soon as he had what was given to him, perhaps in a couple of weeks. A third request was made for the information on February 15, 1982, which did not meet with any success.

On January 18, 1983, after the lawsuit was filed, plaintiff's counsel served a request for production of certain documents, including the previously sought information, which request was refused by the defendant. Plaintiff filed a motion to compel discovery on February 22, 1983. Finally, and for the first time, plaintiff learned the names of Lawson and a Skip Olds, which information was furnished by the defendant in answer to interrogatories served on the plaintiff on March 18, 1983. By this time Lawson was residing in Loogootee, Indiana, and Olds lived in Alliance, Nebraska.

The affidavit of counsel also alleged that because of the defendant's unreasonable delay in furnishing

the names of witnesses, the plaintiff had been deprived of access to the witnesses, and had the defendant's response been made in a timely fashion, the plaintiff could have interviewed the witness Lawson while he still lived in Millard. However, by now plaintiff would be put to unreasonable delay, hardship, and expense in order to interview this witness.

The trial court sustained the motion to require the defendant to produce Lawson's statement, and upon its refusal to comply with the court's order, and in response to a motion for sanctions, the court found the defendant to be in willful contempt of court, fined the defendant $300, and assessed attorney fees against the defendant totaling $1,000.

The defendant relies on *Brakhage v. Graff,* 190 Neb. 53, 206 N.W.2d 45 (1973), to support its claim that the statement taken in this instance by an insurance investigator was a privileged communication between attorney and client. We distinguish *Brakhage* on two grounds. Its holding, in the first instance, was based on the fact that the statement was taken from an insured, and, secondly, the insurance company owed to that person a duty to defend through its attorneys. Those factors are not present in this case.

We also raise the question, but need not decide, whether an insurance claims adjuster, in the first instance, is a "representative of the lawyer" who has been "employed to assist the lawyer" as required by Neb. Rev. Stat. § 27-503(1)(c) (Reissue 1979).

It is also contended by the defendant that under Neb. Ct. R. 26(b)(3) (Rev. 1983) of the Nebraska Discovery Rules, work product documents may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his or her case and that he or she is unable without undue hardship to obtain the substantial equivalent of the materials by other means," and, says the defendant, such showing was not made in this instance. We disagree.

The plaintiff was forced to endure the expense of filing this litigation as the only means by which he could determine whether the facts of the case supported his claim. Had the insurance company complied with his initial request for the name of the teacher in charge, he could have made that determination at an early date and with a minimum of time and expense. The company had at least inferentially promised that information, only to later engage in delaying games to deny him that information. Such tactics will not be tolerated. However, as an aside, we are curious as to whether plaintiff's counsel, in an effort to reasonably serve the interests of the client, has made an attempt to interview the witnesses by telephone.

We review this case in the same manner that we review a criminal case. *In re Contempt of Liles,* *ante* p. 414, 349 N.W.2d 377 (1984). We do not decide the questions anew. We cannot say that the sanctions imposed by the trial court were so insignificant as to amount to an abuse of discretion or to constitute error as a matter of law.

The judgment of the district court is affirmed. The plaintiff is awarded an attorney fee in this court of $1,000, to be paid by the defendant.

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.

CAPORALE, J., dissenting.

I dissent. Although the record establishes that defendant has engaged in considerable gamesmanship, it does not establish what efforts, if any, have been made by plaintiff to interview the witness Jack Lawson. In the absence of such a showing I cannot conclude that the "substantial need" and "undue hardship" required by Neb. Ct. R. 26(b)(3) (Rev. 1983) of the Nebraska Discovery Rules for production of Lawson's statement have been met, even if the statement is "otherwise discoverable" under rule 26(b)(1), a question we need not address in the present posture of this case.

If we were to take instruction from the cases interpreting and applying Fed. R. Civ. P. 26, the progenitor of our rule 26, we would learn that the substantial need and undue hardship burdens are not met by a mere desire to learn what kind of case the opposing party has. In *United States v. Chatham City Corp.*, 72 F.R.D. 640 (S.D. Ga. 1976), the court concluded that since the defendant landlords in a civil rights action could obtain the substantial equivalent of witness statements given to government agents by personal interviews, depositions, or by written interrogatories, the defendants had not shown sufficient undue hardship or need for production of the statements obtained by the government. Stated another way, the record must make a "strong showing of need." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 90 F.R.D. 45 (N.D. Ill. 1981). No showing of need in any degree exists in this case. It is not supplied by our pique at defendant's craftiness. Accordingly, I would reverse with directions to dismiss the contempt citation.