KAREN D. DUNNING, APPELLANT AND CROSS-APPELLEE, V. MARK
H. TALLMAN, APPELLEE AND CROSS-APPELLANT.

504 N.W.2d 85

Filed August 13, 1993.    No. S-90-1144.

Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

W. Michael Morrow and Gregory C. Damman, of Hecht, Sweet, Morrow, Poppe & Otte, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

SHANAHAN, J.

Karen D. Dunning appeals from the judgment of the district court for Lancaster County which found her in contempt and levied a fine for willful violation of a noncompetition provision contained in a property settlement agreement incorporated into the decree dissolving Dunning's marriage to Mark H. Tallman.

## BACKGROUND

Karen Dunning and Mark Tallman were married January 9, 1982. In 1983, Tallman and others founded Data Source Media, Inc. (DSM), a retailer of computer supplies. In September 1984, Dunning left her job as a salesperson with IBM, acquired 51 percent of DSM's capital stock, and became DSM's president. As DSM's chief executive officer, Dunning operated DSM until November 1988, during which time DSM's annual sales increased from $270,000 in 1984 to about $2 million in 1987.

At Dunning's request, Tallman left DSM in February 1988. Because the pair were experiencing marital problems, Dunning filed for a divorce and, in May 1988, began living with Bruce Christensen, DSM's marketing manager.

In November 1988, Dunning and Tallman signed a property settlement agreement which provided, among other things, that Tallman would buy Dunning's shares of DSM stock for $400,000 and that Dunning would not compete with DSM for 2 years, in accordance with a noncompetition provision in the settlement agreement:

[Dunning] agrees not to sell or supervise others selling or cooperate, encourage or in any manner be involved with any firm or person in the selling to cumtomers [sic] located in the State of Nebraska or the State of Iowa of computer and word processing supplies and other products normally and regularly sold by Data Source Media, Inc. (excluding stock paper and forms) for a period of two (2) years following the entry of the Decree.

The district court examined the terms of the property settlement agreement and, in view of relevant evidence presented to the court, found that the agreement's provisions were "reasonable, just and not unconscionable as to either of the parties." The court then approved the property settlement agreement and incorporated all the agreement's provisions into the dissolution decree entered on November 22, 1988. No appeal was taken from the dissolution decree, which, therefore, became final 6 months later. See Neb. Rev. Stat. § 42-372 (Reissue 1988).

In December 1988, Dunning began a new business venture with Christensen. As a part of this venture, Dunning formed a corporation named "Computer Products, Inc." (CP), and Christensen with another incorporated a business called Business Media, Inc. (BMI). Both CP and BMI were Nebraska corporations. The same lawyer who handled the incorporations of CP and BMI also advised Dunning and Christensen about Dunning's business activities in reference to the noncompetition provision in the dissolution decree. The lawyer told Dunning and Christensen that if any question arose regarding Dunning's activities in relation to the noncompetition agreement, Dunning should return to court for a determination whether Dunning's activity violated the noncompetition provision.

Christensen proceeded to operate BMI from an office in Lincoln, Nebraska, and sold retail computer supplies in direct competition with DSM. Meanwhile, Dunning operated CP, which did not retail computer supplies in Nebraska or Iowa, but did rent an office in Kansas for the purpose of selling retail computer supplies in that state. However, Dunning did not keep any of CP's business records at the Kansas office, and phone calls to that office were automatically forwarded to BMI's

4

office in Lincoln.

In large part, CP's operations consisted of shipping wholesale computer supplies from a Kansas warehouse to BMI in Lincoln, although CP, at BMI's request, shipped merchandise directly to BMI's customers in Nebraska and Iowa. On one occasion, Dunning, acting for CP, sold merchandise to Mutual of Omaha (Mutual), a customer to which Dunning had personally made sales while she was at DSM. When Tallman learned of this sale, he notified Dunning that she had breached the noncompetition agreement. Dunning canceled the Mutual sale, but directed Mutual's purchasing agent to Christensen at BMI, where Mutual purchased the merchandise.

Dunning also personally trained a salesperson for BMI. During one meeting, Dunning showed BMI's prospective salesperson a DSM sales brochure and told the trainee that the trainee salesperson would be selling BMI products identical to those described in the DSM brochure. Additionally, during a training session Dunning said that "she [Dunning] really shouldn't be doing this" because training a salesperson to compete directly with DSM was prohibited by the noncompetition agreement signed by Dunning in the proceedings for her divorce from Tallman.

On March 24, 1989, Tallman filed an "Application for an Order to Show Cause" in the district court for Lancaster County, requesting that Dunning state why she should not be held in contempt for willful violation of the noncompetition agreement. Also, Tallman requested that if Dunning was adjudged in contempt, the court "extend the term of the [noncompetition agreement] for an additional two years due to [Dunning's] failure to comply with the terms and provisions of the [noncompetition agreement]." Responding to the order to show cause, Dunning denied any violation of the noncompetition agreement.

In accordance with Tallman's motion based on the finality of the dissolution decree, the district court ruled that Dunning could not raise the question of reasonableness concerning the noncompetition provision in the settlement agreement, since the court, in its dissolution decree, had determined that the

settlement agreement and all its provisions were reasonable and incorporated the agreement into the decree. After a trial conducted under the rules of civil procedure, the district court found that Dunning was in contempt of court because she "willfully and contumaciously" violated the noncompetition agreement and fined her $20,000. However, the court set out a "purge plan" whereby Dunning could purge herself of contempt and eliminate the fine by complying with the terms of the noncompetition agreement for a period "up to and inclusive of November 21, 1991," although the noncompetition agreement, by its own terms, would expire on November 22, 1990. The court also ordered Dunning to pay the costs of the contempt proceedings, including a $5,000 attorney fee for Tallman's lawyer. Finally, the court stated that "[t]his sentence is coercive rather than punitive in nature." When Dunning notified the court that she rejected the purge plan, the court, on November 20, made the $20,000 fine an unconditional and final judgment.

## ASSIGNMENTS OF ERROR

Dunning contends the district court erred (1) by finding that Dunning willfully violated the noncompetition provision in the court-approved settlement agreement; (2) by imposing a punitive fine against Dunning in a civil contempt proceeding; (3) by ordering that Dunning could purge her contempt and exonerate herself from the fine by agreeing to extend the noncompetition agreement for an additional 1 year beyond the term specified in the original agreement; (4) in striking Dunning's "public policy defense," which questioned the reasonableness of the noncompetition agreement; (5) by imposing an excessive fine; and (6) in awarding an attorney fee in a civil contempt proceeding.

On cross-appeal, Tallman argues that the district court (1) abused its discretion by awarding an inadequate attorney fee for Tallman's lawyer and (2) abused its discretion and erred, as a matter of law, by imposing a fine that was insufficient to compel Dunning's compliance with the noncompetition agreement.

## JURISDICTION

"In the absence of a final judgment or final order in the court from which an appeal is taken, an appellate court acquires no jurisdiction." *Schaad v. Simms*, 240 Neb. 758, 759, 484 N.W.2d 474, 475 (1992). A final judgment or order determines a substantial right of a party to an action. See *id.* An order imposing a coercive sanction in a civil contempt proceeding is not a final order because the coercive order is "always subject to modification by the contemner's conduct." *In re Contempt of Liles*, 216 Neb. 531, 534, 344 N.W.2d 626, 629 (1984). Although Dunning's appeal arises from a proceeding initiated concerning civil contempt, Dunning has appealed from an unconditional judgment, namely, the fine of $20,000, which is a final order and is, therefore, appealable. See Neb. Rev. Stat. § 25-1902 (Reissue 1989) (definition of "final order").

## DUNNING'S NONCOMPLIANCE WITH THE DIVORCE DECREE

Dunning contends that the trial court erred in finding that she willfully violated the noncompetition provision of the property settlement agreement.

According to Neb. Rev. Stat. § 25-2121 (Reissue 1989): "Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of . . . (3) willful disobedience of or resistance willfully offered to any . . . order of said court . . . ." For purposes of § 25-2121, " 'willful' means the violation was committed intentionally, with knowledge that the act was in violation of the court order." *In re Contempt of Sileven*, 219 Neb. 34, 38, 361 N.W.2d 189, 192 (1985).

A final judgment or order in a contempt proceeding is reviewed in the same manner as a criminal case. See, *Curtis v. Millard School Dist. No. 17*, 217 Neb. 502, 349 N.W.2d 379 (1984); *In re Contempt of Liles*, 217 Neb. 414, 349 N.W.2d 377 (1984); *Gentle v. Pantel Realty Co.*, 120 Neb. 630, 234 N.W. 574 (1931). A defendant's contempt must be established by proof beyond a reasonable doubt. See, *State ex rel. Kandt v. North Platte Baptist Church*, 225 Neb. 657, 407 N.W.2d 747 (1987); *In re Contempt of Liles*, 217 Neb. 414, 349 N.W.2d 377

(1984).

An appellate court, examining a final judgment or order in a contempt proceeding, reviews for errors appearing on the record. See, Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1992); *Curtis v. Millard School Dist. No. 17, supra*; *In re Contempt of Liles*, 217 Neb. 414, 349 N.W.2d 377 (1984). Consequently, a trial court's factual finding in a contempt proceeding will be upheld on appeal unless the finding is clearly erroneous. See, *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990) (standard of review for a nonjury criminal case); *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

The record in Dunning's case contains evidence sufficient to sustain the district court's finding that Dunning willfully violated the noncompetition agreement, both by shipping merchandise directly to BMI's customers in Nebraska and Iowa and by training a BMI salesperson for competition with DSM. Consequently, we cannot say that the district court was clearly erroneous in its finding, beyond a reasonable doubt, that Dunning willfully violated the noncompetition agreement.

THE $20,000 FINE

Dunning maintains that the district court lacked the power to impose a $20,000 fine in a civil contempt proceeding.

In *In re Contempt of Sileven*, 219 Neb. at 37, 361 N.W.2d at 192, this court stated:

A sentence in a prosecution for contempt, except that committed in open court, which is wholly punitive, may properly be imposed only in proceedings instituted and tried as for criminal contempt. In such proceedings the accused is entitled to due process of law and is presumed to be innocent, cannot be compelled to testify against himself or herself, and must be advised of the nature of the charges. *Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390, 86 L. Ed. 767 (1925); *Gompers v. Bucks Stove & Range Co.*[, 221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1911)]. A criminal sanction is invalid if imposed in a proceeding that is instituted and tried as a civil contempt. *Southern Railway Company v. Lanham*[, 403 F.2d 119

(5th Cir. 1968)].

The district court's characterization that the proceedings against Dunning were "coercive" for civil contempt rather than "punitive" for criminal contempt does not determine the nature of the proceedings. The character, nature, or purpose of a contempt proceeding is determined by the procedure used in a trial to determine whether there is contempt and the sanction imposed. See *State ex rel. Kandt v. North Platte Baptist Church*, 219 Neb. 694, 365 N.W.2d 813 (1985). See, also, *Shillitani v. United States*, 384 U.S. 364, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966) (a sanction imposed, rather than a trial court's characterization of the proceeding, distinguishes civil contempt from criminal contempt). A civil contempt proceeding is primarily coercive because a contemnor, through compliance with a court's order, is able to avoid punishment for noncompliance with the court's order. However, a criminal contempt proceeding is primarily punitive because a court imposes an unconditional sentence to punish the contemnor for disrespecting the court's dignity or disobeying the court's order. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *State ex rel. Kandt v. North Platte Baptist Church*, 219 Neb. 694, 365 N.W.2d 813 (1985); *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985); *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984); *McFarland v. State*, 165 Neb. 487, 86 N.W.2d 182 (1957).

In a civil contempt proceeding, a fine is an appropriate sanction to coerce a contemnor's compliance with a valid order, so long as the contemnor, by complying with the order, may avoid the fine. *Hicks v. Feiock*, 485 U.S. 624, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988). As the U.S. Supreme Court noted in *Penfield Co. v. S. E. C.*, 330 U.S. 585, 590, 67 S. Ct. 918, 91 L. Ed. 1117 (1947), "[o]ne who is fined, unless by a day certain he [complies with the order] has it in his power to avoid any penalty." Thus, in *Latrobe Steel Co. v. United Steelworkers, Etc.*, 545 F.2d 1336 (3d Cir. 1976), the court held that a $10,000 fine which could be avoided if the contemnors complied with the district court's order was civil in nature. See, also, *Bagwell v. International Union, UMWA*, 244 Va. 463, 423 S.E.2d 349 (1992) (a $100,000 fine for each violent violation of

injunction and $20,000 for each nonviolent violation was allowable in a civil proceeding because the fine could be avoided by compliance with the injunction); *Labor Relations Commission v. Fall River Educators' Association*, 382 Mass. 465, 416 N.E.2d 1340 (1981) (a fine imposed for each day's continued contempt is appropriate in a civil proceeding despite the fine's punitive quality because the fine's primary objective was to compel compliance with a court's order).

However, an unconditional fine which the contemnor is not allowed to avoid by compliance with a court's order is impermissible in a civil contempt proceeding because the fine " ' "operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience." ' " *In re Contempt of Sileven*, 219 Neb. at 37, 361 N.W.2d at 191 (quoting *Southern Railway Company v. Lanham*, 403 F.2d 119 (5th Cir. 1968)). See, also, *State ex rel. Collins v. Beister*, 227 Neb. 829, 420 N.W.2d 309 (1988) (unconditional $50 fine was a sanction for criminal contempt); *Penfield Co. v. S. E. C., supra* (an unconditional fine is a sanction for criminal contempt).

In the present case, the district court's imposition of a fine was not necessarily a sanction for criminal contempt because the fine could be avoided by Dunning's compliance with the judicially extended noncompetition agreement. Therefore, if we assume for the moment that the district court was empowered to extend the noncompetition agreement for an additional year, the district court's imposition of a fine was a proper sanction. Moreover, the fine, as a result of Dunning's decision not to comply with the court-extended noncompetition provision, did not necessarily transform an otherwise coercive civil sanction into a criminal penalty. As stated in *Hoffman, Etc. v. Beer Drivers & Salesmen's, Etc.*, 536 F.2d 1268, 1273 (9th Cir. 1976):

> [I]nevitably, wherever a compliance fine is assessed and an opportunity given to purge, the failure to purge will bring about a due date. The due date occurs because the actor has failed to use the key to the jail which the court provided. [Citation omitted.] The occurrence of the due date does not transform civil proceedings, whose sole aim is to secure compliance, into a criminal proceeding. Were

it otherwise, compliance with laws or orders could never be brought about by fines in civil contempt proceedings. Always the final order requiring payment will follow the act or omission which constitutes the failure to purge.

Accord *Roe v. Operation Rescue*, 920 F.2d 213 (3d Cir. 1990) (a fine or prison sentence as a civil sanction may be conditioned on a defendant's action specifically designed to effect compliance with a court's order). Therefore, if the district court had the power to extend the noncompetition provision in the Dunning-Tallman property settlement agreement, a fine was permissible as a sanction for civil contempt.

## JUDICIAL EXTENSION OF A NONCOMPETITION PROVISION

Dunning asserts that the district court erred by imposing a fine for civil contempt because she was able to purge her contempt only by compliance with the judicially extended noncompetition provision.

Courts in several jurisdictions have utilized equitable power to extend a contractual noncompetition provision for a period beyond the agreed term when a party has violated the noncompetition provision. Courts have reasoned that when one party has violated the noncompetition agreement during the prohibitory period, the other party is entitled to an extension of the agreement for a period equal to the duration of the breach so that the complying and injured party may be granted adequate equitable relief and made whole. See, *Levitt Corp. v. Levitt*, 593 F.2d 463 (2d Cir. 1979); *American Eutectic Weld. Alloys Sales Co., Inc. v. Rodriguez*, 480 F.2d 223 (1st Cir. 1973); *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444 (5th Cir. 1971); *Cherne Indus., Inc. v. Grounds & Associates*, 278 N.W.2d 81 (Minn. 1979); *Medx, Inc. v. Ranger*, 788 F. Supp. 288 (E.D. La. 1992).

In *Kasparek v. May*, 174 Neb. 732, 741, 119 N.W.2d 512, 519 (1963), this court, considering whether a trial court properly struck all allegations of damages in a civil contempt proceeding, stated:

In some jurisdictions, a fine may be imposed for the indemnification of the person who has been damaged by

the failure to perform. We are not in accord with these holdings, and state that indemnity for damages cannot be secured in a contempt proceeding. . . . If Kasparek suffered . . . damages, his remedy is an action at law for the subsequent damage. Civil contempt is available to enforce the decree actually rendered, not to afford a remedy for the recovery of subsequent damage.

Thus, in *Kasparek*, this court held that indemnification by an award of damages is unavailable in a contempt proceeding. In the present case, and analogous to *Kasparek*, Tallman requested and obtained a judicial extension of the term for noncompetition prescribed by the agreement incorporated into the Dunning-Tallman dissolution decree, although the term was extended as a condition for Dunning's purge of her contempt. Because an award of damages is unavailable in a civil contempt proceeding, see *Kasparek*, then, under the *Kasparek* rationale, a civil contempt proceeding cannot be the means to afford equitable relief to a party. Thus, without deciding whether an equity court is empowered to extend a noncompetition provision on breach of the provision, we hold that in imposing a sanction for civil contempt, a court cannot use, as a requisite to purge contempt, a condition that, if fulfilled for compliance with a court's order, affords equitable relief to a party.

Although Tallman may have sought some type of relief available as a remedy in a civil action, such as injunctive relief, damages, or both an injunction and damages, Tallman elected to proceed against Dunning for her contempt in violating the noncompetition provision. Because he elected to proceed against Dunning for contempt, sanctions against Dunning are restricted to the sanctions permissible in a civil contempt proceeding. However, the trial court lacked jurisdiction or power to require that Dunning comply with the judicially extended noncompetition provision as a means to avoid the $20,000 fine. Thus, as conduct required to avoid the fine for civil contempt, Dunning's compliance with the judicially extended noncompetition provision was an impermissible means to compel obedience to the dissolution decree and its incorporated noncompetition provision. When the impermissible condition to avoid the fine is removed from the

sanction imposed by the trial court, Dunning is left facing an unconditional fine for civil contempt without any means to purge herself of contempt. At that point, the imposed fine became punitive rather than coercive and, as such, was an impermissible sanction for civil contempt. If Dunning is to be punished by an unconditional fine as a penalty, proceedings are available to punish constructive contempt for disobedience of a judicial order. See, *McFarland v. State*, 172 Neb. 251, 109 N.W.2d 397 (1961); *Leeman v. Vocelka*, 149 Neb. 702, 32 N.W.2d 274 (1948); *Kopp v. State*, 124 Neb. 363, 246 N.W. 718 (1933).

In view of the foregoing, we reverse the district court's judgment which imposed a fine on Dunning for her civil contempt.

## DUNNING'S PUBLIC POLICY DEFENSE

According to Dunning, the district court erred by disallowing her "public policy defense" based on Neb. Rev. Stat. § 59-801 (Reissue 1988): "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal. . . ." See, also, *Stanford Motor Co. v. Westman*, 151 Neb. 850, 39 N.W.2d 841 (1949); *Swingle & Co. v. Reynolds*, 140 Neb. 693, 1 N.W.2d 307 (1941).

In her appellate brief, Dunning makes it clear that she is complaining about the district court's decision not to reexamine the enforceability of the noncompetition agreement. As noted, the Dunning-Tallman dissolution decree had become final before the trial on the allegation of Dunning's contempt. Because the dissolution decree contains a specific adjudication that all provisions of the property settlement were fair to the parties, prior judicial determination was res judicata in reference to reasonableness of the noncompetition provision.

> The doctrine of res judicata is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action. . . .

> Res judicata is founded on a policy favoring termination of an action by preclusion or prevention of

subsequent litigation on the same cause.
*NC+ Hybrids v. Growers Seed Assn.*, 228 Neb. 306, 310-11, 422 N.W.2d 542, 545 (1988). Accord, *In re Estate of Watkins, ante* p. 583, 501 N.W.2d 292 (1993); *Ballard v. Giltner Pub. Sch.*, 241 Neb. 970, 492 N.W.2d 855 (1992).

## ATTORNEY FEE AND COSTS

Dunning contends that the district court lacked authority to assess an attorney fee as part of the costs and that the district court abused its discretion concerning the attorney fee awarded.

"In Nebraska, the general rule is that an attorney fee may be recovered only when authorized by statute, or when a recognized and accepted uniform course of procedure allows recovery of an attorney fee." *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 765, 472 N.W.2d 391, 402 (1991). Accord *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992).

Neb. Rev. Stat. § 42-370 (Reissue 1988) states: "Nothing in sections 42-347 to 42-379 shall prohibit a party from initiating contempt proceedings. Costs, including a reasonable attorney's fee, may be taxed against a party found to be in contempt." Neb. Rev. Stat. §§ 42-347 to 42-379 (Reissue 1988) pertain generally to support, alimony, and disposition of marital property. Furthermore, in *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963), which antedates the 1972 enactment of § 42-370, this court considered assessment of costs in a civil contempt proceeding. Although the *Kasparek* court disallowed an award for damages in a contempt proceeding, the court distinguished a damages award from the question of costs and expenses in a civil contempt proceeding and held that "costs and expenses incurred by an injured party may be recovered in the contempt proceedings from the contemner." 174 Neb. at 741, 119 N.W.2d at 519. Therefore, in a civil contempt proceeding, costs, including a reasonable attorney fee, may be assessed against a contemnor.

"When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of

discretion." *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. at 9, 493 N.W.2d at 165. Because the amount of attorney fee and costs awarded by the district court is supported by sufficient evidence and was not an abuse of discretion, we affirm the district court's judgment assessing costs to Dunning, including a fee for Tallman's lawyer.

## TALLMAN'S CROSS-APPEAL

In the first assignment of error asserted in his cross-appeal, Tallman complains that the district court abused its discretion concerning the attorney fee awarded as a part of the costs assessed against Dunning. As we have noted in reference to Dunning's challenge to the amount of the attorney fee, a district court's award of an attorney fee will be upheld on appeal in the absence of the district court's abuse of discretion. We find no abuse of discretion in the attorney fee awarded for Tallman's lawyer.

In his second assignment of error, Tallman asserts that the fine imposed on Dunning is inadequate to coerce her compliance with the noncompetition provision in the property settlement agreement between Dunning and Tallman. Because we have reversed the fine imposed on Dunning, we need not consider Tallman's assignment of error concerning the amount of the fine imposed.

## CONCLUSION

The district court's judgment imposing a fine against Dunning in a civil contempt proceeding is reversed; however, the district court's findings and judgment of Dunning's civil contempt and its judgment for fees and costs are affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.