**AGRIGENETICS, INC., a Delaware Corporation, Appellant,**

v.

**Kenneth ROSE; Terry Stark; Hollis Oelmann; K.P. Kling; Larry Desaire; Steve Kernen; XYZ Corporation, an Iowa Corporation, Appellees.**

No. 94–3964.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1995.

Decided Aug. 10, 1995.

---

Arthur J. Chatroo, argued, San Diego, CA (John E. Hubbard and Diana J. Vogt, on brief), for appellant.

Leo A. Knowles, argued, Omaha, NE (Patrick E. Brookhouse, Jr., on brief), for appellee.

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Agrigenetics, Inc. (Agrigenetics), appeals from an order entered in the United States District Court for the District of Nebraska denying its motion for a preliminary injunction to stop former employees from engaging in sales activity that was allegedly in violation of their covenants not to compete. For reversal, Agrigenetics argues that the district court misconstrued the anticompetitive language in the employment agreements and therefore improperly applied the four-part test for a preliminary injunction set out in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). For the reasons discussed below, we dismiss the appeal as moot, and remand the case to the district court for further proceedings.

## I.

Agrigenetics is in the business of selling seed, primarily corn and soybean, to markets around the world, under the name Mycogen Plant Sciences (MPS). Defendants are all former employees of Agrigenetics in Iowa and Nebraska. Defendant Kenneth Rose was once the president of Agrigene Seed Division, a division of Agrigenetics. He was terminated on January 3, 1994. Around late January to early February 1994, Rose started his own seed company, ultimately named AgSource Seeds (AgSource). Shortly thereafter, the other defendants [1] were either asked to leave, or voluntarily left, Agrigenetics, and began to work for AgSource. While in Agrigenetics' employ, each defendant signed an agreement entitled "Proprietary Information and Invention Agreement," which included the following paragraph 3(f):

> For employees in sales activities: I agree that, for a period of one year after termination, I will not solicit sales of products that compete with products which were sold by the Company while I was employed by the Company from any person to whom I made sales while an employee.[2]

All defendants left Agrigenetics by mid-February 1994, and Agrigenetics alleges that their conduct as employees of AgSource violated the noncompetition provisions of these agreements.

Agrigenetics, therefore, filed an action for damages and injunctive relief in federal district court on February 24, 1994. *Jurisdic-*

---

1. Terry Stark, Hollis Oelmann, K.P. Kling, Larry Desaire, and Steve Kernen.

2. There are two versions of this provision. Defendants Kling and Desaire signed an earlier, slightly different version which provided:

   I agree that if I am employed as a sales representative, as a supervisor of sales representa-

tives, or if I contract for production of seed for the Company, I will not, while I am employed in such capacity and for one year after I leave the Company's employ, solicit purchases of products from any person to whom I sold products while in the employ of the Company.

tion was based on diversity of citizenship. 28 U.S.C. § 1332. Agrigenetics' complaint alleges that defendants had solicited sales for AgSource by contacting former Agrigenetics clients. On August 24, 1994, Agrigenetics moved for a preliminary injunction to stop defendants from activity which they claimed violated the noncompetition provisions of the employment agreements. The district court held a three-day hearing on this motion and issued an order denying preliminary injunctive relief. *Agrigenetics, Inc. v. Rose*, No. 8:CV94–00102 (D.Neb. Nov. 7, 1994) (Memorandum Opinion). Essentially, the district court concluded that Agrigenetics failed to show that any defendant ever affirmatively initiated steps toward a sale to a former Agrigenetics customer. Thus, the district court reasoned that Agrigenetics was not likely to succeed on the merits of its claim that defendants breached the noncompetition agreements. This appeal followed.

## II.

As a threshold issue, we consider defendants' argument that our recent decision in *Curtis Indus. v. Livingston*, 30 F.3d 96 (8th Cir.1994) ("*Curtis*"), indicates that we should dismiss this appeal as moot. In that case, an employer sought preliminary injunctive relief ordering former employees to comply with the noncompetition provisions of their employment agreements. As in the present case, the noncompetition restriction was to last for one year. Because the one-year period, as measured by the respective departure dates of the defendant-employees, had expired, we held that the appeal was moot. *Id.* at 97. In response to the employer's argument that it was entitled to one year free from competition, we held that contracts not to compete, being in restraint of trade, should be narrowly construed, and therefore concluded that the employer was entitled to no more than the contract as written would have given it—one year free of competition from departing employees measured from the date of their departure from the company. *Id.*

We see no factual distinctions between *Curtis* and the present case. All defendants left Agrigenetics by mid-February 1994; thus, the term of noncompetition provided for in the employment agreements would have expired in February 1995. Nevertheless, the holding of *Curtis* is not necessarily dispositive, because *Curtis* was decided under Minnesota law, and the present case is governed by the law of Nebraska. However, unless Nebraska state law provides for the equitable extension of the noncompetition time period, Agrigenetics' appeal must be dismissed as moot.

Agrigenetics argues that this appeal is not moot because our circuit has recognized the equitable extension of the period of noncompetition, *see Overholt Crop Ins. v. Travis*, 941 F.2d 1361, 1373 (8th Cir.1991) (*Overholt*), and the Nebraska Supreme Court has also recognized this principle, *see Dunning v. Tallman*, 504 N.W.2d 85 (Neb.1993) (*Dunning*). However, *Overholt* was a diversity action in which, like *Curtis*, Minnesota contract law was applied. Therefore, both *Curtis* and *Overholt* are persuasive authority but cannot be binding on a question of Nebraska contract law. In *Dunning*, a case principally concerning the propriety of a civil contempt order, which only tangentially touched upon noncompetition agreements, the Nebraska Supreme Court could not have been more clear in stating that it was *not* deciding "whether an equity court is empowered to extend a noncompetition provision on breach of the provision." 504 N.W.2d at 93. Agrigenetics' citation to and characterization of this authority was thus disingenuous at best.

We note that in the present case, the district court, in its order denying injunctive relief, recognized that Nebraska law requires that contracts restricting competition should be narrowly construed. Slip op. at 7, *citing Adams v. Adams*, 156 Neb. 778, 58 N.W.2d 172 (1953) (*Adams*). In *Adams*, the Nebraska Supreme Court stated:

[T]he law does not look with favor upon restrictions against competition, and an agreement which limits the right of a person to engage in a business or occupation will be strictly construed and will not be extended by implication or construction beyond the fair or natural import of the language used.

58 N.W.2d at 179. More recently, the Nebraska Supreme Court referred to the *Adams* holding as the "correct approach to the interpretation of a covenant restricting competitive freedom." *Midlands Transp. Co. v. Apple Lines,* 188 Neb. 435, 197 N.W.2d 646, 651 (1972); *see Griffeth v. Sawyer Clothing, Inc.,* 202 Neb. 631, 276 N.W.2d 652, 655 (1979) ("Courts generally do not look with favor upon restraints against competition, and contracts containing covenants which impose restraint upon competition will be strictly construed and doubts are resolved against the latitudinarian construction thereof.").

Accordingly, we will apply the same strict construction which we used in *Curtis.* Because each agreement merely provided for a one-year period of noncompetition starting from the date of departure of the employee from the company, we will not work an equitable extension. The expiration of the one-year period thus mooted this appeal.

### III.

For the reasons stated above, Agrigenetics' appeal is dismissed as moot, and the case is remanded to the district court with directions to vacate its order denying preliminary injunctive relief on the merits and to enter a new order denying the request for preliminary injunctive relief as moot. The district court should then proceed to decide the remainder of the case in due course.