IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BRAMBLE V. BRAMBLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMES D. BRAMBLE, APPELLEE AND CROSS-APPELLANT,

V.

LORI A. BRAMBLE, APPELLANT AND CROSS-APPELLEE.

Filed April 3, 2018.    No. A-17-264.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed in part, and in part dismissed.

C.G. (Dooley) Jolly, of Adams & Sullivan, P.C., L.L.O., for appellant.

Megan K. Spomer and Elizabeth Stuht Borchers, of Marks, Clare & Richards, L.L.C., for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Lori A. Bramble appeals from an order of the district court for Douglas County finding Lori in contempt of a provision in the parties' divorce decree, ordering her to pay the cost for restoration of specific appliances in the marital residence, and ordering her to pay James D. Bramble's attorney fees related to the filing of the contempt action. James cross-appeals from a separate order wherein the district court denied his motion to reopen the evidence from the divorce trial. We find that the contempt order of the district court did not constitute a final, appealable order since no sanctions had been imposed. We therefore dismiss Lori's appeal for lack of jurisdiction. We also affirm the district court's decision regarding James' cross-appeal since there is not a sufficient record for our review.

## BACKGROUND

### LORI'S APPEAL

The parties were married in June 1991 and divorced pursuant to an amended decree entered on February 26, 2016. Trial on the divorce action occurred on December 3, 2015. During the parties' separation and until the decree was entered, Lori lived in the marital residence. The amended decree awarded the residence to James and ordered Lori to vacate the residence on February 29, 2016. Lori was awarded half of the equity in the home.

The district court ordered that Lori leave the home in good condition, and was not to remove any fixtures or major appliances, except for either the clothes washer or clothes dryer. James filed an application to show cause on March 14, 2016. James alleged, inter alia, that upon his taking possession of the residence, both the clothes washer and clothes dryer had been removed, with an older clothes dryer left in the marital residence. Additionally, James alleged that Lori had removed the dishwasher, range, and microwave oven, and replaced them with older appliances. James also alleged that Lori had removed the upright freezer and ceiling fans from the residence. There were other allegations made by James regarding violations of the divorce decree that are not the subject of this appeal.

The district court entered a show cause order on March 16, 2016. Lori entered a voluntary appearance and the matter proceeded to evidentiary hearing on October 24, 2016, and January 10, 2017. Lori testified that on May 27, 2015, well before the divorce trial commenced, but while she was in exclusive possession of the residence, she emailed James to inform him that the microwave oven was not working. She decided to purchase a new microwave oven on credit. On December 24, after trial, but before entry of the amended decree, Lori informed James that the dishwasher and the range in the kitchen were not working. She purchased those new appliances on credit as well. Lori also testified that she purchased new ceiling fans during the temporary period, but replaced them with the original fans when she vacated the residence. Lori stated that when she vacated the residence, she left a working clothes dryer, dishwasher, range, and microwave.

James testified that while Lori did leave the appliances noted above, they were not the originals that had been in the house. He also noted that the clothes dryer was not plugged in or connected. He testified that the range did not have the correct plug in order to be installed. James acknowledged that the refrigerator was left in the residence, but the upright freezer was not.

After the hearing, the district court entered an order on January 13, 2017. The district court found Lori in willful and contumacious contempt of the decree of dissolution for removing the ceiling fans, dishwasher, range, refrigerator, and microwave from the residence. The court ordered Lori to appear for sentencing on March 13. The district court also ordered that Lori could avoid sentencing by paying the sum of $3,573 to James no later than March 10, as well as paying James' attorney fees of $1,500 for initiating the contempt action. Lori appeals from the January 13 order.

### JAMES' CROSS-APPEAL

Although no written motion is contained in the record before us, it is apparent from the record that James asserted a motion which requested that the court reopen the dissolution trial to allow him to present further evidence. The topic that he wished to reopen related to the filing of 2014 tax returns. On the first day of the evidentiary hearing on his contempt motion James testified

that Lori told him she was not going to file a tax return for 2014 since she had no income in that year. James stated that as a result of Lori's representation, he filed a joint tax return for that year. At that point, following an objection from counsel for Lori, the court stated that the tax return issue was not part of the contempt motion and would not be taken up as part of the present hearing.

James' attempt to reopen the dissolution trial based on the tax return issue was addressed again on the second day of trial on the contempt motion. At that time, the district court overruled the motion summarily. Finally, in a written order dated February 28, 2017, the district court overruled James' "Complaint to Vacate the Decree." Since we do not have the complaint before us, the record is silent as to whether this complaint is the same motion as was addressed during the contempt trial or whether there were two separate motions. However, from the court's order, it is apparent that the subject matter of James' complaint did include the tax return issue. James cross-appeals from this order.

## ASSIGNMENTS OF ERROR

Restated and consolidated, Lori argues the district court erred in finding her in contempt, imposing a purge plan, and awarding attorney fees to James. James argues on cross-appeal that the district court erred in denying his motion to reopen the evidence in the divorce trial without granting an evidentiary hearing.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

It is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

## ANALYSIS

### LORI'S APPEAL

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). An order of contempt in a postjudgment proceeding to enforce a previous final judgment is a final order. See *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). However, the law in Nebraska has long been that the finding of contempt alone, without an order of sanction is not appealable. See *Meisinger v. Meisinger*, 230 Neb. 37, 429 N.W.2d 721 (1988). See, also, *In re Interest of Karlie D.*, 19 Neb. App. 135, 809 N.W.2d 510 (2011) (analogizing interlocutory order in juvenile proceeding to one in contempt proceeding making findings of contempt but imposing no sanction and concluding such situation results in no final order from which to appeal).

In *Smeal Fire Apparatus Co., supra*, the Nebraska Supreme Court overturned previous precedent by ruling that the then existing distinction between the imposition of a criminal or civil contempt sanction would no longer be the basis for determining whether a contempt order was final and appealable. Previously, the Supreme Court had held that a party could not appeal a civil, coercive sanction. *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993). The court in *Smeal Fire Apparatus Co.* determined that a person must be allowed to appeal from a civil, coercive sanction. The court reasoned that otherwise, a person would "either face continuing coercive sanctions or risk a court's determination that the issue is moot because they complied with the purge plan." *Smeal Fire Apparatus Co.*, 279 Neb. at 683, 782 N.W.2d at 867. However, the Supreme Court did not overturn the longstanding rule that a sanction must be imposed before the order becomes final.

Here, in its January 13, 2017, order, the district court found Lori to be in contempt of court due to a willful and contumacious violation of the divorce decree. The district court ordered Lori to appear for sentencing more than 2 months after finding her in contempt. The order allowed Lori to avoid sentencing by paying the sum of $3,573 to James, as well as $1,500 in attorney fees to James by March 10, 3 days before the sentencing hearing. No sanction was imposed in the January 13 order. Lori appeals from the January 13 order and a February 8 order denying her motion to alter or amend the January 13 order. However, since no sanction has been imposed, we cannot find that the order appealed from was a final, appealable order. As a result, we are without jurisdiction to hear Lori's appeal and find that it must be dismissed.

In reaching this result, we are cognizant of the difficult position in which Lori is placed. When the district court chooses to in essence impose a purge plan without a sanction, her choice is to either (1) follow the directions of the court to avoid sentencing, even though she believes the district court erred in its finding of contempt; or (2) choose not to abide by the court's directives and risk a heavier sanction once sentence is imposed. Once the sanction is imposed, she could then seek a stay of its imposition pending appeal. See *Sickler, supra.* While we cannot say it was error for the district court to give Lori an opportunity to comply with its order prior to imposing a sanction with a formalized purge plan, the court's order does place Lori in a difficult situation. In any event, her efforts to appeal immediately are premature and we have no alternative other than to dismiss her appeal for lack of jurisdiction.

## JAMES' CROSS-APPEAL

James argues on cross-appeal that the district court erred in denying his motion to reopen the divorce trial and receive new evidence without granting an evidentiary hearing. James argues that Lori's actions amounted to newly discovered evidence and the district court should have granted his motion to withdraw his rest and reopen the evidence.

Generally, meaningful appellate review requires a record that elucidates the factors contributing to the lower court's decision. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017). It is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *Hynes, supra*. Here, James attempted to adduce evidence regarding an additional tax liability on his 2014 return that he allegedly incurred due to the actions of Lori. Lori objected to the testimony as it was not relevant to the contempt action. The district court agreed with Lori and at first refused

to hear any further evidence on it during the course of the contempt hearing. On the second day of the contempt hearing, the court summarily overruled James' motion to reopen the evidence in the divorce trial.

Our record on this issue is murky at best. As stated previously, the record before us contains no written motion. The district court's February 28, 2017 order references a "Complaint to Vacate the Decree." Despite this reference however, counsel for James indicated at oral argument that there was no written motion filed on this topic, but that an oral motion was asserted which is contained in the bill of exceptions. However, our review of the bill of exceptions does not reveal the presence of such a motion. In sum, there is no record before us of either an oral or written motion addressing this issue. While it is apparent from the record that a motion or complaint in some form existed, we simply do not have it before us. Therefore, given the absence of a sufficient record, we must affirm the decision of the district court denying James' efforts to reopen the dissolution trial and present further evidence.

## CONCLUSION

Since no sanction was imposed, we conclude that we are without jurisdiction to consider Lori's appeal of the district court's contempt order. Lori's appeal is therefore dismissed. We affirm the district court's order overruling James' attempt to reopen evidence in the dissolution trial since he has not presented us with a sufficient record for review.

AFFIRMED IN PART, AND IN PART DISMISSED.