TANYA C. MADDUX, APPELLEE AND CROSS-APPELLANT, V. THOMAS C. MADDUX, APPELLANT AND CROSS-APPELLEE.

475 N.W.2d 524

Filed October 11, 1991.    No. 89-403.

Philip P. Lyons, of Colfer, Lyons, Wood, Malcom & Goodwin, for appellant.

Michelle J. Oldham, of Mousel Law Firm, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Thomas C. Maddux appeals a civil contempt holding wherein the district court for Red Willow County found him in contempt of court for failure to pay child support as ordered.

In its order of February 16, 1989, the trial court found that

Maddux "has remained in continued contempt of this Court, that unless he pays the amounts due he is sentenced to thirty (30) days in jail commencing April 1, 1989."

We find that the trial court committed plain error when it imposed a punitive sanction rather than a coercive sanction as required in a civil contempt proceeding. We therefore vacate the trial court's punitive sanction and remand the contempt proceeding with direction to the trial court to impose a coercive sanction.

Maddux's ex-wife, Tanya, has cross-appealed the trial court's retroactive reduction in child support Maddux was ordered to pay. We also reverse the trial court on this issue.

## THE CONTEMPT PROCEEDINGS

The Supreme Court always reserves the right to correct error unassigned or uncomplained of but which is plainly evident from the record and prejudicially affects a litigant's substantial right, and which if left uncorrected would result in a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process, regardless of whether the error was raised at trial or on appeal. *State v. Nowicki, ante* p. 130, 474 N.W.2d 478 (1991). Here, it is plainly evident from the record that the trial court committed error when it improperly imposed a punitive sanction in a civil contempt proceeding.

The contempt proceeding in this case was instituted by Maddux's ex-wife and was tried as civil, not criminal, contempt. See *State ex rel. Collins v. Beister*, 227 Neb. 829, 420 N.W.2d 309 (1988). This court has made a distinction between civil, or coercive, and punitive sanctions. See, e.g., *McFarland v. State*, 165 Neb. 487, 86 N.W.2d 182 (1957); *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984). When a coercive sanction is imposed, "the contemner holds the keys to his jail cell, in that the sentence is conditioned upon his continued noncompliance." *Id*. at 534, 344 N.W.2d at 628. A punitive sanction is akin to a criminal sentence, in that it is not subject to mitigation should the contemner comply with the court order. Such a sanction is a final order and is reviewable on appeal. "The coercive sanction, on the other hand, is always subject to modification by the contemner's conduct; that sanction is not

final in any sense. Therefore, punitive sanctions are reviewable by appeal; whereas coercive sanctions can only be attacked collaterally by habeas corpus." *Id.* at 534, 344 N.W.2d at 629.

Citing *Liles*, this court has dismissed, for lack of an appealable order, appeals based upon lower court findings of contempt for failure to pay child support in civil proceedings. Since the contemner in child support cases is given an opportunity to purge himself or herself of the contempt by paying what the court finds to be a reasonable amount under the circumstances toward the child support arrearages, the contemner "holds the keys to his jail cell" because the sentence is conditioned upon the contemner's continued noncompliance. See, *Rol v. Rol*, 218 Neb. 305, 353 N.W.2d 19 (1984); *Frandsen v. Frandsen*, 216 Neb. 828, 346 N.W.2d 398 (1984).

The issues here are whether Maddux did indeed "hold the keys to his jail cell" and whether the trial court's order fixed a reasonable sum of money under the circumstances for Maddux to pay toward his child support arrearage to purge himself of contempt. The order of the district court in this case provided that "unless [Maddux] pays the amounts due he is sentenced to thirty (30) days in jail commencing April 1, 1989." A criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as a civil contempt. See *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985). The order ceased to be coercive on April 1, 1989, because the jail sentence was no longer subject to mitigation. If the child support amounts due were not paid by April 1, 1989, Maddux was required to serve a punitive 30-day sentence, regardless of whether the amounts were paid subsequent to that date. Maddux no longer would be "holding the keys to his jail cell" after April 1. An unconditional penalty is criminal in nature because it is " 'solely and exclusively punitive in character.' " *Hicks v. Feiock*, 485 U.S. 624, 633, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988). The contempt order, as it related to the jail commitment of Maddux, as of April 1, 1989, was a punitive sanction and constituted a final order which is reviewable on appeal.

A punitive contempt sanction imposed by a trial court in a child support case must be set aside when the commitment to jail is to take effect in futuro, because such a commitment is a

conditional judgment. See, *Romshek v. Osantowski*, 237 Neb. 426, 466 N.W.2d 482 (1991); *State v. Wessels and Cheek*, 232 Neb. 56, 439 N.W.2d 484 (1989); *Federal Land Bank of Omaha v. Johnson*, 226 Neb. 877, 415 N.W.2d 478 (1987). A conditional judgment is, as a general rule, wholly void because the judgment does not perform in praesenti and the final effect is left to speculation and conjecture. *Romshek v. Osantowski, supra.* Furthermore, because conditional orders are wholly void, such orders do not mature into a judgment when the conditions specified therein are not met. *Lemburg v. Adams County*, 225 Neb. 289, 404 N.W.2d 429 (1987). In Maddux's case, the contempt commitment was conditional. Consequently, the trial court's order upon entry was a nullity as it related to Maddux's commitment to jail.

When a commitment to jail is utilized as a coercive sanction in a civil contempt proceeding involving willful and contumacious failure to pay child support, a court may sentence the contemner to jail for a specified period, provided the court order permits the contemner to purge himself or herself of contempt and be released from jail upon payment of a reasonable amount of money toward the back child support. See, *Shillitani v. United States*, 384 U.S. 364, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966); *Hicks v. Feiock, supra.* Under those circumstances, the contemner will then have "the keys to his or her jail cell." That is because upon the contemner's compliance with the conditions imposed, the contemner must promptly be released from jail, even though the maximum jail time imposed has not been served.

We next turn to the issue of whether the district court's sanction order fixed a definite and reasonable sum of money for Maddux to pay toward his delinquent child support so that he could purge himself of contempt. To be reasonable, the amount of money required to be paid for a contemner to purge himself or herself of contempt of court must be within the contemner's ability to pay. See *Shillitani v. United States, supra.* In that regard, the trial court may take into consideration not only the assets and financial condition of the contemner and the contemner's ability to raise money, but also the contemner's ability to earn money through a work release program while the

contemner serves the coercive sanction in jail. If a contemner complains that he or she does not have the ability to comply with the purge order, the burden is upon the contemner to prove that inability. See *United States v. Rylander*, 460 U.S. 752, 103 S. Ct. 1556, 75 L. Ed. 2d 534 (1983). In Maddux's case, the trial court's order does not disclose whether Maddux, to purge himself of contempt, was required to pay in excess of $42,000 in back child support, which is based upon $1,250 per month from the inception of the decree, or whether Maddux was required to pay the total of the lesser amounts the trial court ordered in earlier contempts. Under the record of this case, either amount was not within Maddux's power to pay.

Since this court is vacating the punitive sanction imposed upon Maddux by the trial court and the cause is being remanded for imposition of a proper coercive sanction, the contempt proceeding here resumes its character as a civil proceeding. As previously stated, the imposition of a coercive sanction is never final and may not be attacked by direct appeal. As a result, we need not address Maddux's assignments of error.

## MODIFICATION OF CHILD SUPPORT

In her cross-appeal, Maddux's ex-wife assigns as error the trial court's modification of child support payments retroactive to the date the application to modify was filed. She also asserts that it was error to modify the order at a time when Maddux was in arrears on the payment of his child support obligation.

The general rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification order itself. Throughout the past few decades, we have repeatedly stated the rule that when a divorce decree provides for the payment of stipulated sums monthly for the support of a minor child or children, contingent only upon a subsequent order of the court, such payments become vested in the payee as they accrue. Generally, the courts are without authority to reduce the amounts of such accrued payments. See, *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939); *Clark v. Clark*, 139 Neb. 446, 297 N.W. 661 (1941); *Schrader v. Schrader*, 148 Neb. 162, 26 N.W.2d 617 (1947); *Ruehle v. Ruehle*, 161 Neb. 691, 74 N.W.2d 689 (1956); *Ferry v. Ferry,*

201 Neb. 595, 271 N.W.2d 450 (1978); *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980); *Conrad v. Conrad*, 208 Neb. 588, 304 N.W.2d 674 (1981); *Scully v. Scully*, 213 Neb. 857, 331 N.W.2d 801 (1983); *Gordon v. Gordon*, 231 Neb. 857, 438 N.W.2d 762 (1989); *Contra Costa Cty. ex rel. Petersen v. Petersen*, 234 Neb. 418, 451 N.W.2d 390 (1990).

In *Wassung, supra,* the defendant had asked to be relieved of liability for payments which had accrued since his December 1937 application for modification of child support. This court upheld the lower court decision which granted a modification, but limited it prospectively to amounts due after April 1939. The court stated that it was without authority to reduce the amounts retrospectively. " '[T]he modifying decree relates to the future only *and from the time of its entry.*' " (Emphasis supplied.) *Wassung, supra* at 443, 286 N.W. at 342.

Upon occasion, depending upon the equities involved, this court has approved modification of a child support order retroactive to the filing date of the application for modification. In *Goodman v. Goodman*, 173 Neb. 330, 113 N.W.2d 202 (1962), all child support payments which accrued after the date of filing for a modification were canceled. *Goodman* was a case in which the mother had deliberately removed the children from this state for the express purpose of keeping them from their father. Because neither her ex-husband nor the clerk of the court knew her whereabouts, she "deprived the children of the benefit of the support payments." *Id.* at 335, 113 N.W.2d at 205. Thus, "[u]nder the circumstances of this case, it was proper for the court to cancel the payments which accrued after the filing of the application to modify the judgment." *Id.* at 336, 113 N.W.2d at 205.

There have been other circumstances in which a retroactive modification was allowed. See, e.g., *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978); *Williams v. Williams*, 206 Neb. 630, 294 N.W.2d 357 (1980) (doctrine of equitable estoppel held applicable to defeat claims for accrued child support payments where natural father reasonably believes that adoption of child has been completed); *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991) (credit allowed for amounts due for support of a child for a period of time in which the child resided with the

noncustodial parent); *Contra Costa Cty. ex rel. Petersen v. Petersen, supra* (respondent credited for monthly payments made directly to the custodial parent by respondent's parents).

In Nebraska, dissolution of marriage cases are equitable in nature. *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985). And one who comes into equity must come with clean hands. *Id.* These rules extracted from *Ohler, supra*, apply not only in original dissolution proceedings, but also in proceedings for modification of the decree of dissolution. See *Ohler, supra.*

In those cases where we have permitted reduction in child support retroactive to the date of filing the petition, the payor generally had acted in good faith in attempting to meet the payor's obligation to pay child support. That cannot be said for Maddux.

During a 2½-year span, from October 1986 to February 1989, Maddux earned in excess of $27,000, but paid only $1,050, or a mere 4 percent, of his gross income for the support of his five minor children. The chronology of events reflects that Maddux made most of his payments during that 2½-year span in response to contempt proceedings. Maddux would tender a token payment followed by a lengthy timespan in which Tanya received nothing by way of child support, and the process would begin again. In the summer of 1988, for 3 months, Maddux earned $2,000 gross per month, with take-home pay of $1,600. During the same period, he paid only a total of $600 toward his child support obligation. For the calendar year 1988 Maddux's income was in excess of $12,000, while his total payment on child support for his five children was $700. At the time of the modification hearing, Maddux was delinquent in his child support payments in excess of $42,000. The record further reflects that he had never maintained health insurance on his five children as he was ordered to do. That chore fell upon Tanya's parents. The meager amounts Maddux paid on his child support obligation, coupled with the timing of those payments, reflect that Maddux was not acting in good faith. Maddux, at the time of the modification of child support hearing, did not enter the trial court with clean hands. On the other hand, Tanya, unlike the payees in some of the cases wherein we granted retroactive reductions in child support,

walked into the court with clean hands. The balance of equities in this case precludes Maddux from obtaining a modification of child support payments retroactive to the date he filed his application for modification.

Tanya's second assignment of error on cross-appeal is without merit. She argues that under *Voichoskie v. Voichoskie*, 215 Neb. 775, 340 N.W.2d 442 (1983), *appeal after remand* 219 Neb. 670, 365 N.W.2d 467 (1985), equitable estoppel bars the modification of child support payments when the payments are in arrears due to the willful misconduct of the payor. In *Voichoskie*, we determined that the doctrine of unclean hands can be invoked to bar the petitioner's claim for relief when the "evidence shows that [he] is able to pay the arrearage or is unable to pay through some intentional conduct on his part." 215 Neb. at 779, 340 N.W.2d at 445.

In this case, as in *Voichoskie v. Voichoskie, supra*, the paying father has alleged an inability to make the payments ordered and alleged a change in circumstances since the time of the original order. In *Voichoskie*, we held that was sufficient for the application to be heard on its merits. The record here reflects that due to a substantial change in circumstances Maddux was entitled to a reduction in his child support obligation. While Maddux's unclean hands prevent him from obtaining a retroactive reduction, such should not be invoked to bar him from a prospective reduction in child support. Tanya's second assignment of error is meritless.

The punitive sanction imposed in this case is vacated, and this cause is remanded to the district court with instructions to impose a civil sanction in connection with its finding that Maddux is in contempt of that court. The trial court's order reducing child support is hereby modified to affect only those support payments coming due after February 16, 1989.

AFFIRMED IN PART AS MODIFIED, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.