ANNE VERLENE LOCKE, FORMERLY KNOWN AS ANN VERLENE VOLKMER, APPELLEE, V. THOMAS JOSEPH VOLKMER, APPELLANT.

601 N.W.2d 807

Filed November 2, 1999.   No. A-98-988.

Kent E. Rauert, of Svehla, Barrows & Thomas, for appellant.

Anne Locke, pro se.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Thomas Joseph Volkmer appeals the York County District Court's dismissal of a contempt charge against Anne Verlene Locke, formerly known as Ann Verlene Volkmer. The contempt charge arose out of Anne's noncompliance with previous court

orders which were entered as a result of a provision in the parties' divorce decree which required Anne to pay one-half of an income tax liability owed by Thomas and Anne.

## BACKGROUND

Thomas and Anne were married in Henryetta, Oklahoma, in 1977. They had one child, Tyler, born in 1984. Anne filed a petition for dissolution of marriage in 1993 in the district court for York County, Nebraska. The marriage was dissolved pursuant to a "Decree Dissolving Marriage," which was filed August 24, 1993. The decree awards custody of the child to Thomas and provides that Anne is to pay child support in the amount of $225 per month, provide health insurance for Tyler, and pay half of his medical, dental, and optical expenses.

Anne has worked for the Nebraska Department of Correctional Services for 11 years. Her paycheck stub for 80 hours of work for a 2-week pay period ending July 5, 1998, shows gross pay of $1,126.57 and a net of $685.86. The only unusual deduction from her 2-weeks' pay is $105.10 for "CT OD SUPT" (court ordered support), which we presume is for Tyler, as there is no evidence of any other child in this brief evidentiary record. Doing the math from this paycheck stub reveals that Anne is paid $14.08 per hour, grosses $29,290 per year, and nets approximately $17,832.36 (after $2,732 in child support is taken from her earnings). She owns a 1987 Toyota pickup truck without debt, but she has had to make various repairs to the vehicle. Anne adduced no evidence of any extraordinary expenses, but she told the trial court that she was struggling to get by and was paying the best she could on her tax obligation to her former husband. Anne lives in a two-room apartment in Lincoln and owns home furnishings, including a television, VCR, and stereo. She has contributed to the retirement plan through her job for approximately 8 years. She indicated to the court that her plans were to move in with friends in an effort to save money in order to meet the obligation that is the source of dispute in this case.

The divorce decree provides that "[t]he parties have incurred an undetermined liability with the Internal Revenue Service and the Nebraska Department of Revenue, which debt shall be

equally divided between them." The evidence shows that the amount of the tax debt was $25,972.57, which included $13,711 of back taxes, $6,632.40 in interest, and $5,629.17 in penalties and fees. By August 1997, Thomas had paid the amount in full. According to the decree, Anne is responsible for half of the total debt, which based on the amount paid by Thomas would be $12,981.29. In Anne's pro se brief and at oral argument before this court, she argues that she should not be liable for the tax debt, because it was from Thomas' business, among other reasons.

In November 1996, Thomas brought a contempt action against Anne for violation of the decree, because she had not paid him for her half of the tax debt. The court subsequently ordered Anne to pay $50 per month beginning January 1, 1997, to the clerk of the district court in satisfaction of the obligation to Thomas. We note that there was no finding that Anne was in contempt and therefore no purge plan. She was simply ordered to pay $50 per month. Anne made a payment of $50 in February 1997 as ordered.

In April 1997, Thomas brought a second contempt action against Anne for violation of the order requiring her to pay $50 per month. On November 4, 1997, in a document entitled "Judge's Minutes," the court seems to find Anne in contempt as the minutes recite that the "parties both appear for sentencing of petitioner pursuant to the court's finding of contempt." But, the judge's minutes said that incarceration would not benefit either party and that Anne was simply to continue to pay the $50 per month, plus an additional $50 per month until her arrearages from the first order were caught up. Anne made payments of $100 in January, February, April, May, and August 1998 and payments of $50 in June and July 1998.

We also note that the court signed and filed an order dated November 4, 1997, in which the court found that Anne could purge herself by paying $500 to the clerk of the district court on or before November 1, 1997. This was not done. The obvious inconsistencies between the judge's minutes and the order are problematic.

In August 1998, Thomas brought a third contempt action against Anne for violation of the decree and the orders which

had been entered in the first and second contempt actions. Thomas also requested that the court enter judgment in his favor against Anne for the unpaid amount of the tax debt that she is obligated to pay. After a hearing, the court dismissed this contempt citation on the ground that Anne had shown cause, although the court did not explain its rationale. Nonetheless, the court required her to continue to abide by the previous order and pay at least $100 per month in satisfaction of her obligation to Thomas. (We take it that the court's intention was to relate this directive back to the judge's minutes of November 4, 1997.) The court denied Thomas' request for entry of judgment against Anne for the full amount due on the basis that it "would be further penalizing her." Thomas timely appealed.

## ASSIGNMENTS OF ERROR

Thomas assigns four separate errors as follows: The district court erred (1) in failing to hold Anne in contempt of the terms of the divorce decree and subsequent court orders relating to her obligation to pay Thomas one-half of the parties' Internal Revenue Service liability; (2) in failing to enter judgment against Anne in the amount of $12,981.29, less amounts already paid by Anne; (3) in failing to award Thomas the statutory interest prospectively on the outstanding amount owed to Thomas by Anne; and (4) in failing to award Thomas attorney fees and costs.

## STANDARD OF REVIEW

An appellate court, reviewing a final judgment or order in a contempt proceeding, reviews for errors appearing on the record. *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997); *Novak v. Novak*, 245 Neb. 366, 513 N.W.2d 303 (1994). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Klinginsmith v. Wichmann, supra*; *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997). A trial court's factual finding in a contempt proceeding will be upheld on appeal unless the finding is clearly erroneous. *Klinginsmith v. Wichmann, supra*; *Novak v. Novak, supra*.

## ANALYSIS

*Contempt Charge.*

■ Thomas first argues that the district court should have found Anne in contempt. When a party to an action fails to comply with an order of the court made for the benefit of the opposing party, such act is ordinarily a civil contempt if there has been willful disobedience of the court's order, which is an essential element of civil contempt. *Klinginsmith v. Wichmann, supra*; *Novak v. Novak, supra*; *Bahm v. Raikes*, 200 Neb. 195, 263 N.W.2d 437 (1978). Willful means the violation was committed intentionally, with knowledge that the act was in violation of the court order. *Klinginsmith v. Wichmann, supra*; *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993); *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985). If it is impossible to comply with the order of the court, the failure to comply is not willful. *Novak v. Novak, supra*. A party's contempt must be established by proof beyond a reasonable doubt. *Klinginsmith v. Wichmann, supra*; *Novak v. Novak, supra*.

Consequently, in order for Anne's failure to comply with the terms of the divorce decree and subsequent court orders for monthly payments to be contemptuous, Thomas must show beyond a reasonable doubt that her failure to comply was willful. See *Novak v. Novak, supra*. Thomas attempted to show that due to Anne's level of income, she could afford to pay the $100 as ordered every month, and therefore her nonpayment was willful or intentional.

Anne defended against the contempt charge by showing that she had substantially complied with the judge's minutes, which required her to pay $100 per month, and that she paid only $50 in several of the months because she had insufficient funds to pay the ordered amount. She explained that the shortages were due to repairs she had made to her truck, child support, insurance payments, and medical bills for Tyler. In addition, she testified that in order to be able to comply with the order, she had made plans to move in with friends in an effort to save money.

Anne made payments of $100 in January, February, April, May, and August 1998 and payments of $50 in June and July 1998. Thus, she was short $100 in December 1998, $100 in

March 1999, and $50 in both June and July. Therefore, by the time of the third contempt proceeding, she was short $300 from what the judge's minutes of November 4, 1997, had ordered, and she had not complied with the order of November 4, 1997, to purge by paying $500 before November 1, 1997 (3 days before the entry of this order).

Nonetheless, we have difficulty with the notion of holding a party, who has made some payments on the obligation, in contempt of prior court orders which are inconsistent, confusing, and imprecise. Because we have considerable trouble figuring out which order of November 4, 1997, the trial court expected Anne to follow, we are hard pressed to find that the district court committed error in not finding her in contempt. In *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991), the Nebraska Supreme Court held that to be reasonable, the amount of money that a person is required to pay in order to purge oneself of contempt must be within the person's ability to pay. The trial court must take into consideration the assets and financial condition of the contemnor and his or her ability to raise money. *Id.* See *Allen v. Sheriff of Lancaster Cty.*, 245 Neb. 149, 511 N.W.2d 125 (1994). We think the court was rather lenient in setting the monthly sum to be paid at $100, given that a rough calculation of what could be garnished, a presumably predetermined reasonable amount, under Neb. Rev. Stat. § 25-1558 (Reissue 1995), indicates that Anne's wages could be garnished to the tune of about $220 per month if she was treated as the "head of a family" and $350 to $400 per month if not so treated. Moreover, the record fails to reveal that Anne has any extraordinary expenses, for example, for medical conditions for herself or Tyler. But, in the final analysis, we will not find her in contempt of the contradictory and confusing judge's minutes and order of November 4, 1997.

Obviously, while we reach the same result as the district court, our reasoning is different. However, since Anne has disposable income of $17,800 after normal deductions and payment of her child support, she clearly can pay something toward her obligation. The portion of her wages which would be subject to lawful garnishment is perhaps an appropriate guide. We now turn to the future handling of this matter.

*Denial of Entry of Judgment.*

Thomas next argues that the district court should have entered judgment with interest against Anne for the full amount of the tax debt, less amounts she has already paid. The court refused to do this, but, rather, ordered Anne to continue to pay $100 per month until her arrearages were caught up, which will obviously take a long time.

At the time of the contempt hearing, Anne was employed earning a net of approximately $1,483 per month (after child support), but by her testimony, she had been struggling to meet the $100 per month order by the court. There was no evidence from Thomas that Anne is wasteful with her money, but Anne did not introduce concise evidence on how her money is spent, for example, the cost of her housing and utilities. The district court chose monthly payments of $100 as the manner it deemed best to handle Anne's payment of her obligation to Thomas. The court took the view that entering a judgment against Anne would act as a "penalty." If Thomas were granted the judgment he requested, then the full array of enforcement procedures would be available to him. Perhaps the district court concluded that placing the parties in that situation was potentially harmful, because it is not likely to improve an already difficult situation which is fraught with anger and bitter feelings, at least on Anne's part. If "past is prologue," then the district court could assume aggressive use of enforcement procedures by Thomas if the debt for taxes were reduced to a judgment, and it appears the district court sought to avoid that. But, balanced against this is Thomas' right to have Anne pay her share of the debt.

Having made these observations, we are still begging the question of whether Thomas is legally entitled to a judgment against Anne for the balance left owing on her share of the income tax debt, given that Thomas has paid the full amount of what the divorce decree ordered be paid equally by both. In response to Anne's arguments that she should not have to pay this debt, we emphasize that we cannot go behind the already final divorce decree to reexamine the matter of the parties' tax debt and who should pay it. The remedy for Anne's complaints about the original decree and its handling of the tax matters was

to appeal that decree within 30 days. That was not done, and the decree is long ago final.

If we analogize this situation to accrued payments of child support or alimony, we know that the law is clear that the court cannot forgive such accrued payments. See, *Scully v. Scully*, 213 Neb. 857, 331 N.W.2d 801 (1983); *Conrad v. Conrad*, 208 Neb. 588, 304 N.W.2d 674 (1981). And from this rule, it seems to naturally follow that accrued amounts can and should be reduced to a definite and certain judgment so that they can be collected. To say that the imposition of a judgment against Anne would further "penalize her" begs the question of Thomas' entitlement to the judgment and how such a matter is most efficiently handled. While it may seem harsh to impose the judgment, we believe that the law and judicial efficacy require that it be done. When the law provides for numerous mechanisms for the collection of a debt which has been reduced to sum certain judgment, we suggest that a series of contempt proceedings is inefficient and unnecessary. Efficiency seems to compel that the judgment be entered, although we concede that we have not found any authority on point.

Thus, we proceed by analogy. The rule prohibiting the forgiveness or reduction of accrued payments has been part of our jurisprudence since at least *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939). *Wassung* involved an attempt by a wife who was owed substantial past-due child support payments to execute on her husband's earnings, but the trial court enjoined her from enforcing the accrued and unpaid installments by execution of attachment, garnishment, or any other manner. The trial court further limited her to $10 per month in collection on the accrued amounts. The Nebraska Supreme Court upheld the district court's order, finding that courts of general jurisdiction have the inherent power to do all things necessary for the administration of justice within the scope of their jurisdiction, which includes advisory power over their process and the power to stay temporarily execution on judgments rendered by them whenever it is necessary to accomplish the ends of justice and prevent injustice. The *Wassung* court pointed out that this was a power which should be exercised sparingly and only in those instances where justice requires it. *Wassung* provides a recognized method

to avoid some of the harshness of the entry of a judgment against Anne, depending on the evidence and future procedure in this case. But, *Wassung* does not support the notion that the harshness is avoided by simply denying the entry of the judgment.

We believe that the district court should hold a hearing and determine the amount of the debt which Anne owes Thomas for her share of the Internal Revenue Service debt, giving her credit for payments made. Because that amount is an accrued and vested amount from a long ago final divorce decree, we believe that Thomas, having paid the debt under the compulsion of the Internal Revenue Service, is entitled to a judgment in his favor against Anne for her share of the debt which he paid. See, e.g., *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991) (child support payments become vested in payee as they accrue, and thus, courts are without authority to reduce amounts of such accrued payments); *Wolter v. Wolter*, 183 Neb. 160, 158 N.W.2d 616 (1968) (installments of alimony become vested as they accrue and past-due installments become final judgments, which courts have no authority to cancel or reduce). By analogy, courts should enter judgment when a party is entitled to such. This has the effect of reducing the debt to an amount certain, and we remand the cause to the district court for that purpose. The reduction of the debt to a judgment will have the side benefit of cleaning up the confusion surrounding the November 4, 1997, orders.

*Denial of Attorney Fees and Costs.*

Thomas asserts that he should have been awarded attorney fees and costs for bringing the third contempt action against Anne. Neb. Rev. Stat. § 42-370 (Reissue 1998) provides that a reasonable attorney fee may be taxed against a party found to be in contempt. In a civil contempt proceeding relating to an item in the parties' divorce decree, costs, including a reasonable attorney fee, may be assessed against a contemnor. See *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993). However, since Anne was not found in contempt, a finding we affirm, there is no basis for an award of fees, and this assignment of error necessarily fails.

*Anne's Arguments on Appeal.*

While Anne did not file a cross-appeal, she raises several new arguments on appeal. Anne's pro se brief centers around her underlying liability for the tax debt as set forth in the decree. First, she argues that the district court erred in its sustained support of Thomas' efforts to collect the amount for the tax debt from her. Second, she argues that the district court erred in allowing the contempt charges to be presented to the court because they pertained to an unenforceable item in the original decree.

The difficulty is that even if Anne's concerns are well taken, these issues are not appropriate for review by this court at this time. The portion of the decree relating to the tax debt was long ago final. Anne did not appeal the 1993 decree, which was when the assessment of the tax liability could have been brought up on appeal. Therefore, we cannot consider Anne's plea that we relieve her from this debt.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.