SMEAL FIRE APPARATUS CO., APPELLEE, V. ROBERT KREIKEMEIER
AND R. K. MANUFACTURING, INC., APPELLANTS.
690 N.W.2d 175

Filed November 2, 2004.    No. A-03-354.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellants.

Paul R. Elofson, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Robert Kreikemeier and R. K. Manufacturing, Inc. (collectively RKM), appeal from an order of the district court for Dodge County filed June 21, 2002, finding RKM in contempt for violating an injunction order entered by the district court on June 19, 1990, on behalf of Smeal Fire Apparatus Co. (SFAC). On appeal, RKM contends that the trial court erred in finding RKM in contempt and ordering RKM to pay $73,500 of SFAC's fees and costs. For the reasons set forth below, we affirm in part and dismiss in part.

## BACKGROUND

The instant case revolves around a dispute between RKM and SFAC, both of which manufacture aerial fire apparatuses. Specifically, this case involves the mechanisms required to raise and lower an aerial fire ladder. The movement of the ladder is controlled by a hydraulic cylinder which is controlled by a hydraulic valve. Within the valve is a spool which directs the hydraulic fluid through the valve to the cylinder, and the fluid subsequently returns to a reservoir where the fluid is stored for another cycle.

The record shows that Kreikemeier was employed at SFAC from 1983 to 1988 and was eventually promoted to the position of aerial fire ladder foreman. In 1988, Kreikemeier left SFAC to start his own company, R. K. Manufacturing, Inc. In 1989, SFAC filed suit against RKM. In SFAC's third amended petition, SFAC alleged that it has a trade secret with respect to its "surge free control valve created by grinding or milling the valve spool so as to create an unbalanced control spool which converts the tank side of a hydraulic cylinder to a fluid damper which dissipates pressure surges." SFAC alleged that Kreikemeier utilized this process in his own business, constituting a breach of his duty not to disclose or utilize this process.

In June 1990, the trial court entered an injunction order agreed to by the parties. That order enjoined RKM from manufacturing any aerial fire ladders for 1 year and further stated:

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the

defendants Robert Kreikemeier and R. K. Manufacturing, Inc. are enjoined from disclosing, utilizing, implementing or revealing the following described matter:

A surge free control valve created by grinding or milling the valve spool so as to create an unbalanced control spool which converts the tank side of a hydraulic cylinder to a fluid damper which dissipates pressure surges.

Which injunction shall apply to all aerial fire ladder hydraulic systems including all control (extension, hoist and swing) systems and the outrigger systems; provided, however, said defendants are not prohibited from utilizing or implementing any commercially available hydraulic control valves or valve spools.

On July 19, 2001, SFAC filed an application for an order to show cause as to why the trial court ought not to hold RKM in contempt of the injunction, based on RKM's grinding and use of spools, which actions SFAC believed to violate the injunction.

After a hearing, the district court entered an order on June 21, 2002, finding RKM in contempt of the injunction. The district court stated that since June 1996, RKM had been grinding a "Rexroth" spool on both sides of the pressure port, allowing the hydraulic fluid to flow through the pressure port before the fluid is metered out through the metering notch of the tank side. The court found that RKM's grinding of a Rexroth spool on both sides of the pressure port violated the injunction, because RKM's grinding resulted in a surge-free control valve "so as to create an unbalanced control spool which converts the tank side of a hydraulic cylinder to a fluid damper which dissipates pressure surges." The court also found that RKM's violation of the injunction was willful and intentionally committed with knowledge that RKM's acts were in violation of the injunction.

In an order filed February 28, 2003, the trial court determined the remedies flowing from its order finding RKM in contempt. The court stated that RKM could purge its contempt by fully complying with the following: Within 30 days of the court's order, notify the court of all apparatuses found to be in violation of the injunction; within 60 days, notify all of the owners in writing, advising them that the use of the units is in violation of an injunction; and make a good faith effort to secure the cooperation

of the owners of the units and get permission from the owners to exchange the valve spools. The court stated that all valve spool replacements should be completed by RKM within 2 years of the date of the court's order. The trial court also ordered RKM to pay SFAC $73,500 to offset SFAC's attorney fees, court costs, and expert witness fees. RKM appeals.

## ASSIGNMENTS OF ERROR

On appeal, RKM generally contends that the trial court erred in finding RKM in contempt of court and in ordering RKM to pay $73,500 for SFAC's attorney fees, court costs, and witness fees.

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Cerny v. Longley*, 266 Neb. 26, 661 N.W.2d 696 (2003). In the absence of a judgment or a valid order finally disposing of a case, an appellate court is without jurisdiction to act and must dismiss the purported appeal. *Id.*

In determining whether contempt orders are appealable, the Nebraska Supreme Court and the Nebraska Court of Appeals have made a distinction between civil, or coercive, sanctions and punitive sanctions. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *Hammond v. Hammond*, 3 Neb. App. 536, 529 N.W.2d 542 (1995). When a coercive sanction is imposed, " 'the contemner holds the keys to his jail cell, in that the sentence is conditioned upon his continued noncompliance.' " *Maddux v. Maddux*, 239 Neb. at 241, 475 N.W.2d at 528, quoting *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984). An order imposing a coercive sanction in a civil contempt proceeding is " 'always subject to modification by the contemner's conduct' " and thus is not a final, appealable order. *Dunning v. Tallman*, 244 Neb. 1, 6, 504 N.W.2d 85, 90 (1993), quoting *In re Contempt of Liles, supra*. Rather, the coercive sanction can only be attacked collaterally by habeas corpus. *Maddux v. Maddux, supra*; *State ex rel. Kandt v. North Platte Baptist Church*, 225 Neb. 657, 407 N.W.2d 747 (1987); *Hammond v. Hammond, supra*.

A punitive contempt sanction is akin to a criminal sentence, in that "it is not subject to mitigation should the contemner comply with the court order. Such a sanction is a final order and is

reviewable on appeal." *Maddux v. Maddux*, 239 Neb. at 241, 475 N.W.2d at 528. See, *State ex rel. Kandt v. North Platte Baptist Church, supra*; *In re Contempt of Liles, supra*; *Hammond v. Hammond, supra.*

Further, a "criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as a civil contempt," and an "unconditional penalty is criminal in nature because it is ' "solely and exclusively punitive in character." ' " *Maddux v. Maddux*, 239 at 242, 475 N.W.2d at 528.

RKM argues that this court has jurisdiction to hear this appeal in its entirety because the court's directive that RKM pay $73,500 of SFAC's attorney fees and costs constitutes a final, appealable order in that RKM must pay the fees regardless of whether RKM takes any action to remedy the court's finding of contempt. SFAC states that we do not have jurisdiction, because the district court failed to issue a specific directive as to what would occur in the event that RKM did not comply with the mandate to replace the particular valve spools.

The finding of contempt alone, without a noncontingent order of sanction, is not appealable. *Hammond v. Hammond, supra*, citing *Meisinger v. Meisinger*, 230 Neb. 37, 429 N.W.2d 721 (1988). The general rule is that a contempt order entered in a postjudgment proceeding that does not terminate that proceeding is nonappealable. There must be both a finding of contempt and a noncontingent order of sanction. *Hammond v. Hammond, supra*, citing *State ex rel. Kandt v. North Platte Baptist Church, supra.*

In *Hammond v. Hammond, supra*, the district court found a husband in contempt for failing to pay a certain amount set out in a court-approved property settlement agreement. The court gave the husband 30 days in which to purge himself of the contempt by paying $15,250 to his ex-wife in accordance with the property settlement agreement, but the court did not impose a sanction if the husband failed to comply with the order. We stated, "Because the district court in this case did not impose an order of sanction, let alone a noncontingent order of sanction, the proceedings were not terminated in the court below, and the district court's order is not appealable. We therefore dismiss this appeal." *Hammond v. Hammond*, 3 Neb. App. 536, 538-39, 529 N.W.2d 542, 544 (1995).

Similarly, in the instant case, the court's finding of contempt is not appealable, because the trial court did not impose a noncontingent order of sanction. Although the trial court found RKM in contempt and stated that RKM could purge by taking certain actions, the court failed to state what would occur if RKM did not take those steps.

As to that portion of the court's order requiring RKM to pay SFAC "$73,500 to offset [SFAC's] attorney fees, court costs and expert witness fees," that award is a final, appealable order because RKM cannot avoid paying those fees and costs. See *Michael B. v. Donna M.*, 11 Neb. App. 346, 652 N.W.2d 618 (2002) (affirming award of attorney fees and costs in civil contempt proceeding while dismissing court's finding of contempt for lack of final, appealable order). See, also, *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778 (Mo. 2003) (holding that award of fees in civil contempt proceeding was appealable even though merits of contempt order itself were not final or appealable).

In the instant case, RKM contends that the court erred in ordering RKM to pay $73,500 of SFAC's attorney fees, costs, and expert witness fees. The Nebraska Supreme Court has held that in a civil contempt proceeding, costs, including a reasonable attorney fee, may be assessed against a contemnor. *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993); *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963). Further, when an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Dunning v. Tallman, supra.*

At the contempt hearing, SFAC presented evidence showing that it had incurred $66,661.81 in fees and costs since June 2001 and SFAC stated that it had incurred those fees as a result of trying to enforce RKM's compliance with the injunction. The record shows that in addition, SFAC's attorneys had advanced SFAC money for costs in the amount of $7,638.60, for a total of $74,300.41. Thus, the court's award of fees and costs in the amount of $73,500 was not an abuse of discretion.

## CONCLUSION

Because the district court in this case did not impose a non-contingent order of sanction, the court's finding of contempt was

not terminated in the court below and the district court's order in that regard is not appealable. We therefore dismiss this appeal in that regard. We affirm the portion of the court's order awarding SFAC $73,500 in attorney fees and costs, given that the court did not abuse its discretion in its award of those fees and costs.

AFFIRMED IN PART, AND IN PART DISMISSED.